UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                :
LOURDES MEDICAL CENTER OF :
BURLINGTON COUNTY               :
                                :
        Petitioner,             :
                                :       CIVIL ACTION NO. 04-4494 (JCL)
    v.                          :
                                :       **OPINION**
JNESO, DISTRICT COUNCIL I,      :
IUOE, AFL-CIO                   :              **(CLOSED)**
                                :
        Respondent.             :
_____ :

**LIFLAND, District Judge**

_____Before the Court is a motion by Petitioner Lourdes Medical Center of

Burlington County ("Petitioner" or "Lourdes") to alter this Court's Memorandum

and Order of November 14, 2005, which granted the motion of Respondent

JNESO to confirm an arbitration award.  Also before the Court is Lourdes'

petition to vacate the arbitration award.  For the reasons discussed herein,

Lourdes' petition to vacate will be granted, and its motion to alter will be denied

as moot.

## I.   BACKGROUND

The factual background of this case was thoroughly detailed in the

"Background" section of this Court's Memorandum and Order of November 14,

2005.  The Court relies on that previous recitation of the facts and will provide only a brief summary of the relevant facts here.

Lourdes is an acute care hospital located in Willingboro, New Jersey. JNESO is a labor union that represents nurses employed at Lourdes.  On or about September 23, 2003, Lourdes informed JNESO that it intended to make certain administrative and scheduling changes in the Maternity, Peri-Operative, and Intermediate Pulmonary Care units of the hospital. (Compl. ¶ 13; Ans. ¶ 13.)  The anticipated changes were expected to result in the lay-off of several nurses in the affected units.  (Compl. ¶ 16; Ans. ¶ 16.)  On October 6, 2003,  JNESO filed a grievance on behalf of the affected nurses.  JNESO listed the "nature of the grievance" as the fact that "6 RNs were laid off in violation of the CBA." (Declaration of Michael G. Brennan in Support of Plaintiff's Opposition to Defendant's Motion for Corfirmation of Arbitration Award and Plaintiff's Cross-Motion to Vacate Arbitration Award (hereinafter, "Brennan Decl."), Exh. H (grievance form).)  In accordance with the Collective Bargaining Agreement ("CBA") in effect at the time, the dispute was submitted to the New Jersey State Board of Mediation for final and binding arbitration.

Several important events occurred in October and November 2003, after the grievance was filed but before the arbitration hearing was held.  First, on October

2

24, 2003, Lourdes informed JNESO that it intended to make administrative and shift changes to the Emergency Department as well.  (Compl. ¶ 33; Ans. ¶ 33.) JNESO did not file another grievance specifically addressing these changes. Second, on October 26, 2003, the changes to the Maternity, Peri-Operative, and Intermediate Pulmonary Care units of the hospital went into effect.  Despite Lourdes' earlier predictions, no nurses were laid off; however, several had their work hours reduced.  Finally, in November, the changes to the Emergency Department went into effect resulting in the reduction of work hours for additional nurses.

Gerard Restaino ("Restaino"), the designated arbitrator, held a hearing on April 29, May 7, and June 8, 2004.[1]  On August 16, 2004, Restaino issued his Opinion and Award.  He determined that the reductions in the nurses' work hours constituted "layoffs" within the meaning of the CBA, thus implicating the layoff provisions of the CBA, which required that probationary employees be laid off before non-probationary employees and that probationary employees be laid off in order of seniority.  (See Brennan Decl., Exh. I (CBA), at Art. XI.)  He further concluded that Lourdes had not complied with these provisions when

_____

[1] Lourdes' many complaints regarding the conduct of this hearing are set forth in detail in this Court's November 14, 2005 Memorandum and Order.

implementing the changes in the Maternity, Peri-Operative, and Intermediate Pulmonary Care units or in the Emergency Department.   As a remedy, he ordered that the "shifts shall be changed back to those that were in effect on October 25, 2003 [and that] [a]ll affected employees shall be made whole for any lost wages and/or contractual benefits such as, but not limited to health insurance."  (Compl. Ex. A at 43.)

On September 15, 2004, Lourdes filed a Complaint and Petition to vacate the arbitration award pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Lourdes alleged: (1) that the award "was rendered in manifest and irrational disregard of the law and evidence"; (2) that Restaino was biased against Lourdes and violated Lourdes' due process rights by failing to conduct a fair hearing; and (3) that the award did not draw its essence from the CBA.  On October 11, 2004 JNESO answered and filed a counter-claim, in which it denied arbitrator bias and sought confirmation of the arbitration award.  Shortly thereafter, JNESO filed a motion to summarily confirm the award.

On November 19, 2004, Lourdes submitted its brief in opposition to JNESO's motion to confirm the award.  Lourdes argued that it was entitled to conduct discovery to investigate the alleged arbitrator bias and due process violations, and that the Court should allow such discovery to occur prior to

4

deciding whether the confirm or vacate the arbitration award.[2]  Lourdes did not

address the substantive merits of JNESO's motion to confirm the arbitration award

in its opposition papers, but included the following footnote at the end of its brief:

> Should the Court decide that Lourdes in entitled to no discovery
> before the Court confirms or vacates the . . . award, Lourdes
> respectfully requests that the Court provide Lourdes with a
> reasonable amount of time following the Court's decision to
> respond to the substantive merits of JNESO's Motion to Confirm
> arbitration Award.

On February 2, 2005, Magistrate Judge Falk ruled that the parties could engage

in limited discovery on the issue of arbitrator bias.  Despite its position that discovery

was crucial to its case, Lourdes failed to proceed with discovery in a timely manner

and failed to prepare proposed Orders as requested by Judge Falk.  See Lourdes v.

JNESO, Civ. Act. No. 04-4494, Memorandum and Order (Dec. 8, 2005).

On November 14, 2005, this Court granted JNESO's motion to confirm the

award.  Three days later, Lourdes wrote a letter to the Court arguing that the Court

had effectively—and unfairly—closed discovery and deprived Lourdes of an

opportunity to address the merits of the petition by issuing a final judgment

---

[2] Specifically, Lourdes argued that it should be allowed to "serve requests
for admissions, written interrogatories, document requests, and possibly take
depositions, to obtain information regarding what occurred during off-the-record,
*ex parte* communications between JNESO and the arbitrator, and to obtain other
evidence that would rebut JNESO's position that [the arbitrator] was not biased
against [Lourdes] . . . ."

confirming the award.  <u>See</u> Letter from Thomas M. Beck to Magistrate Judge Falk (Nov. 17, 2005) ("Our client and we simply do not understand how the Court could have issued a final judgment in this matter after the Court led us to believe that we would be permitted to complete discovery and to then address the merits of the dispute.").

Shortly thereafter, on November 29, 2005, Lourdes filed a motion to alter judgment, asking to Court to "rescind its November 14, 2005 Memorandum and Order in its entirety, to vacate the judgment that was entered, and to permit Lourdes to complete discovery before responding to JNESO's motion on the merits."  (Lourdes' Memorandum in Support of its Motion to Alter Judgment at 1.)

After examining the docket and providing both parties with an opportunity to be heard, the Court determined that "the time for discovery ha[d] expired."  As a result, and "in view of other developments in the case . . . and for good cause shown," the Court ordered discovery closed on December 2, 2005.  <u>See</u> <u>Lourdes v. JNESO</u>, Civ. Act. No. 04-4494, Order Closing Discovery (Dec. 2, 2005).  The Court agreed, however, that Lourdes should be permitted to address the merits of the issue, as per its request in the footnote cited above.  Accordingly, in an Order dated December 8, 2005, this Court ruled that Lourdes could submit further briefing on the merits, and stayed its November 14 Order "pending the Court's

6

consideration of Lourdes' brief on the 'merits.'"  <u>Lourdes v. JNESO</u>, Civ. Act. No.

04-4494, Memorandum and Order (Dec. 8, 2005).  Lourdes provided the

additional briefing on January 5, 2006.  Specifically, Lourdes filed a cross-motion

to vacate the arbitration award as well as a brief in opposition to JNESO's motion

for confirmation and in support of Lourdes' cross-motion to vacate, which

addressed the merits of the underlying issue.

The Court's Orders of December 2, 2005 and December 8, 2005 effectively

resolved the issues raised by Lourdes' motion to alter.  Discovery has been closed

for good cause; the Court's Memorandum and Opinion of November 14, 2005 has

been stayed.[3]  Accordingly, all that remains for this Court to address is the merits

of the underlying issue—*i.e.*, whether the arbitration award should be confirmed or

vacated.  This issue has now been fully briefed by both parties following a

reasonable opportunity to conduct discovery into the issue of arbitrator bias.

## II.   <u>DISCUSSION</u>

Lourdes argues that the Court should vacate the arbitration award in its

entirety because: (1) the award decides issues outside the scope of the grievance;

(2) Arbitrator Restaino engaged in misconduct that prejudiced Lourdes' right to a

fair hearing; (3) Arbitrator Restaino was biased against Lourdes; and (4) the award

---

[3] As a result, Lourdes' motion to alter will be denied as moot.

does not draw its essence from the CBA.  The Court addresses each of these arguments below.

### A.    Standard of Review

District courts have very little authority to upset arbitrators' awards.  United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995).  Indeed, "'the test used to probe the validity of a labor arbitrator's decision is a singularly undemanding one.'"  Id. (quoting News Am. Publ'ns, Inc. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990)).  With that said, arbitration awards may be upset in limited circumstances.  The Federal Arbitration Act ("FAA") states that an award may be vacated if: (1) "the award was procured by corruption, fraud, or undue means"; (2) there is "evident partiality or corruption" by the arbitrator; (3) the arbitrator was "guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy [or of] any other misbehavior by which the rights of any party have been prejudiced"; or (4) the arbitrator exceeded his powers or failed to reach a "mutual, final, and definite award."  9 U.S.C. § 10.[4]

_____

[4] Earlier in these proceedings, Lourdes argued that the Federal Arbitration Act does not apply to arbitrations conducted pursuant to collective bargaining agreements, and that the LMRA is the sole governing statute.  In its Memorandum

It is also well established that An arbitrator's award must "draw[] its essence from the collective bargaining agreement," Nat'l Ass'n of Letter Carriers v. United States Postal Serv., 272 F.3d 182, 185 (3d Cir. 2001).  Accordingly, a district court may vacate an arbitration award if there is evidence that the arbitrator's decision was based on a manifest disregard of the CBA.  See Local 863 Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. Jersey Coast Egg Producers, Inc., 773 F.2d 530, 534 (3d Cir. 1985); Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 280 (3d Cir. 2004) ("An award may be vacated if the arbitrator demonstrates manifest disregard for the CBA.").  The manifest disregard of the law doctrine is a "strict standard" in which a "reviewing court will decline to sustain an award only in the rarest case."  Newark Morning Ledger Co. v. Newark Typographical Union, 797

---

and Order of November 14, 2005, this Court noted that although there was "some support" for Lourdes' position, see, e.g., International Brotherhood of Electrical Workers, 380 F.3d 1084, 1097-98 (8th Cir. 2004), there was "stronger support" for JNESO's position that the FAA does apply.  Lourdes v. JNESO, Civ. Act. No. 04-4494, Memorandum and Opinion at 9-10 (Nov. 14, 2005).  Ultimately, the Court determined that it did not have to definitively resolve the issue because the inquiry and outcome was the same under both the FAA and the LMRA.  Id. at 9.  Lourdes raised the issue again in its most recent papers, but explained that it would analyze the hearing and award under the FAA "because the Court has expressed its intention to apply the FAA rather than Section 301."  (Lourdes' Mem. at 18 n.5.)  Since neither party currently objects to the use of the FAA—and neither party has indicated how the analysis would be different under the LMRA—the Court will analyze the case under the FAA.

F.2d 162, 165 (3d Cir. 1986); <u>see also</u> <u>United Transp. Union Local 1589</u>, 51 F.3d

at 380 ("Only when an arbitrator 'acted in manifest disregard of the law, or if the

record before the arbitrator reveals no support whatsoever for the arbitrator's

determination,' may a district court invade the province of the arbitrator.")

(citation omitted).

"Effusively deferential language notwithstanding, the courts are neither

entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions

of arbitrators.  Courts still maintain a significant role in the labor arbitration

process; they have not been relegated to the status of merely offering post-hoc

sanction for the actions of arbitrators.  Rare though they may be, there will be

instances when it is appropriate for a court to vacate the decision of an arbitrator."

<u>Matteson v. Ryder Sys.</u>, 99 F.3d 108, 114 (3d Cir. 1996) (internal citation

omitted).

### B.   ANALYSIS

### 1.   The Award Does Not Exceed the Scope of the Grievance

Lourdes' first argument is that the award should be vacated pursuant to §

10(a)(4) because Arbitrator Restaino exceeded his powers by deciding issues that

were not within the scope of the underlying grievance.  <u>See</u> 9 U.S.C. § 10(a)(4)

(permitting vacatur of an arbitration award "where the arbitrators exceeded their

powers"). The scope of an arbitrator's authority "is defined not only by the terms of the CBA, but also by the scope of the issues submitted by the parties." Major League Umpires Ass'n, 357 F.3d at 279. Although it is "the responsibility of the arbitrator . . . to interpret the scope of the parties' submission" in the first instance, "it is within the courts' province to review an arbitrator's interpretation." Matteson v. Ryder System, Inc., 99 F.3d 108, 113 (3d Cir. 1996). When conducting this review, a district court must accord significant deference to the arbitrator's interpretation of the issues submitted. Id. In fact, an arbitrator's interpretation of the issue is entitled to the same deference as an arbitrator's interpretation of a CBA, and therefore cannot be overruled if there is any support at all for the arbitrator's interpretation. Id.; see also Mobil Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299, 302 (3d Cir. 1982) ("[T]he deference that is accorded to an arbitrator's interpretation of the collective bargaining agreement should also be accorded to an arbitrator's interpretation of the issue submitted.").

Lourdes argues now, as it did before Arbitrator Restaino, that the issue submitted for arbitration was limited to the narrow question of whether the six employees named in the grievance were laid off in violation of the CBA. Restaino defined the issue more broadly. He accepted the position advanced by JNESO that

the relevant issue was:

> Whether the Hospital violated the collective bargaining agreement
> by laying off employees effective October 26, 2003 and November
> 23, 2003?  If so, what shall be the remedy?

(Brennan Decl., Exh. D (arbitration award) at 4.)

Lourdes contends that Restaino's definition of the issue, and thus his

ultimate award, exceeded the scope of the grievance because (1) he included

changes to the Emergency Department, which were not announced until after the

October 6 grievance was filed, and (2) the remedy he ordered was not only to give

affected employees lost wages and contractual benefits, but to change their shifts

back to the way they were prior to October 25, 2003.

Arbitrator Restaino responded to Lourdes' arguments as follows:

> The Employer places a lot of emphasis upon the grievance that
> was filed which referenced six RNs.  The Employer contends that the
> Union is attempting to extend beyond the grievance that was filed and
> they do not have the right to do so under the terms of the Agreement.
> More importantly, the Employer argues that it is unconscionable to
> extend a grievance and present information before an arbitrator without
> the Employer having the opportunity to at least answer those additional
> concerns prior to any arbitration hearing.
>
> Unfortunately, I do not agree with the Employer's interpretation
> of the grievance.  That grievance is broadly worded and, in particular,
> it says in the remedy desired, "*these employees and any similarly
> situated employees will be reinstated.  They will be made whole.*"  That
> certainly encompasses more than just the six named individuals. The six
> named individuals gave the Union the opportunity to discuss the issue
> with the Employer and if the investigation of that grievance revealed
> more than six, the Union was protected by not having to file another

grievance.  The Employer knew full well that the Union was asking for relief for more than just the six named grievants.  To that end, I must reject the Employer's argument that the grievance being processed and the arguments raised by the Union at the hearing are mutually exclusive.  In fact, they are joined at the hip.  The conduct of the Union in the instant manner in presenting the grievance in the manner in which it did, protected the rights of its bargaining unit so that the Union would not have to file continual grievances over the shift changes.

(Id. at 38-39.)

The Court begins its deferential review of the Arbitrator's interpretation with an examination of the CBA and the grievance.  Article VII of the CBA states that  "[t]he written grievance shall contain the facts of the grievance, the applicable sections of the Agreement which have allegedly been violated and the remedy requested."  (Brennan Decl., Exh. I (CBA) at 9.)  It also provides that "[u]nless the parties agree otherwise, no more than one (1) issue shall be presented to an Arbitrator in any single case."  Id. at 10.

The grievance provides as follows:

NATURE OF THE GRIEVANCE: 6 RN's were laid off in violated of the CBA.   Maria Miraglia, Kim Sansoni, Judy D'Ernico, Romania Hill, Patricia Bossi.
WHAT CONTRACT PROVISIONS OR PRACTICE HAS BEEN VIOLATED?  XI, XII, XIV and any and all related articles and/or provisions and/or practices.
REMEDY DESIRED: These employees and any similarly situated employees will be reinstated.  They will be made whole.

(Brennan Decl., Exh. H (grievance form).)

13

The Court is inclined to agree with Lourdes that the "one issue" presented by this grievance is narrower than the Arbitrator found it to be, and is limited to the changes imposed in the  Maternity, Peri-Operative, and Intermediate Pulmonary Care units—not the Emergency Department. However, this Court cannot overturn an arbitrator's interpretation of the issue simply because it would have reached a different conclusion in the first instance.  There is some support for the Arbitrator's interpretation.  His belief that the inclusion of "these employees and any similarly situated employees" in the grievance broadened the scope of the issue is not unreasonable.   Since the Arbitrator's interpretation is not completely lacking in support or reason, this Court will not upset it.

### 2.    The Arbitrator Did Not Commit Misconduct Warranting Vacatur of the Arbitration Award

Lourdes also argues that the arbitration award should be vacated under § 10(a)(3) because Arbitrator Restaino engaged in misconduct and violated Lourdes' due process rights.  Section 10(a)(3) of the FAA provides that a district court may vacate an arbitration award if the arbitrator was "guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy [or of] any other misbehavior by which the rights of any party have been prejudiced."  9 U.S.C. § 10(a)(3).  Lourdes contends that Arbitrator Restaino "engaged in all of the aforementioned behavior."  (Lourdes' Mem. at 24.)

14

The Court disagrees.

### (a)   Misconduct in Refusing to Postpone the Hearing

The Court addressed Lourdes' argument with respect to Arbitrator Restaino's refusal to postpone the hearing in its Memorandum and Order of November 14, 2005.  The Court concluded that Restaino "did not deprive [Lourdes] of a fair hearing or act unreasonably in his refusal to postpone the [April 19, 2004] date which the parties had known about since February and agreed on." Lourdes v. JNESO, Civ. Action No. 04-4494, Memorandum and Order (Nov. 14, 2005) at 14.  Nothing in Lourdes' additional briefing convinces this Court to reconsider its prior discussion.  Accordingly, the Court reaffirms its previous analysis and conclusion with respect to this argument.

### (b)   Misconduct in Refusing to Hear Evidence

Lourdes next argues that Restaino committed misconduct by refusing to allow Lourdes to cross examine JNESO President Diane Prestwood or JNESO representative Pierre Joanis, and that this fact alone warrants vacatur of Restaino's award.  The Court also addressed this argument in its November 14, 2005 Opinion, and concluded that Restaino's decision did not amount to misconduct warranting vacatur:

> Restaino extended the hearing for [Lourdes] despite objection from JNESO, and gave [Lourdes] two full days to present its

> case and all of its evidence.  In view of the fact that [Lourdes]
> ultimately presented its witnesses, its inability to cross-examine
> Pierre Joanis or Diane Prestwood did not make the hearing
> unfair . . . .

Id.  As above, nothing in Lourdes' additional briefing convinces this Court to

reconsider its prior discussion, and the Court reaffirms its previous conclusion

with respect to this issue as well.

### (c)   Other Misbehavior

Lourdes further challenges the validity of the award pursuant to § 10(a)(3)

by alleging that Arbitrator Restaino engaged in "other misbehavior" that

prejudiced Lourdes throughout the arbitration.  In support of this allegation,

Lourdes argues that Restaino denied Lourdes the right to object to exhibits

introduced into the record by JNESO at the April 19 *ex parte* hearing; that he

ignored unrebutted evidence establishing that Lourdes was losing approximately

$500,000 per month at the time it made the disputed scheduling changes; and that

he misconstrued and disregarded his own evidentiary ruling limiting the use of a

prior interest arbitration award between the parties.  The Court finds that these

grounds do not warrant the vacatur of the arbitration award under § 10(a)(3).

First, the Court finds that Restaino did not improperly preclude Lourdes

from objecting to exhibits.  The record indicates that although Restaino did not

permit Lourdes to make objections on the record during the hearing, he did

16

acknowledge that Lourdes had a right to object and instructed Lourdes to include any objections to the exhibits in its post-hearing brief.[5]  (Brennan Decl., Exh. B, at 185-190.)  Moreover, even if Restaino had completely precluded Lourdes from objecting, the Court would not vacate the award on this ground because Lourdes has not established that it suffered any prejudice as a result.  Lourdes does not even attempt to explain why it believes the disputed documents should have been excluded or how improper admission of the documents prejudiced its case.

Lourdes also fails to prove that Arbitrator Restaino engaged in misconduct by "ignor[ing] unrebutted evidence" establishing that Lourdes was losing approximately $500,000 per month at the time the disputed changes were announced.  The evidence Lourdes refers to is testimony offered by Dennis Sparks, Lourdes' Human Resources Director, who stated that:

> Back then [in September/October 2003] we were losing close to half a million dollars a month.  We put the models in place for two reasons.  One, patient care.  Two, there was a financial impact to us . . . [Lourdes] was in a financial situation that we described as dire, and we needed to make sure that the model went into place, the dollars were going to be saved, we had the right people in the right place doing the right jobs as soon as possible.

---

[5] Lourdes concedes that it was permitted to include evidentiary objections in its post-hearing brief, and that it in fact did so.  (Lourdes' Mem. at 6.)  The fact that Arbitrator Restaino did not expressly address these objections in his award does not mean—as Lourdes asserts—that he "completely ignored" them.  (Id.)

(Brennan Decl., Exh. C, at 14, 51.)

Restaino did not ignore this testimony.  To the contrary, his opinion makes clear that he considered the testimony, but found that it was insufficient to substantiate the $500,000 figure:

> As evidenced by the testimony of Mr. Sparks, the employer was motivated to make the changes in the shifts because of dire financial need (i.e., they were losing at least $500,000 per month), as well as a desire to change to a more nationally accepted model of patient care in the Maternal Care Unit. . . . However, what is missing from [Lourdes'] argument is that fact that there is nothing in the record to substantiate the $500,000 monthly loss [Lourdes] alleges was occurring. . . . While I am not disputing the fact that the Hospital, like any other healthcare facility, probably is experiencing losses based upon the circumstances they are faced with by insurance carriers on a reimbursement plan; nevertheless, the obligation of [Lourdes] to . . . substantiate the claim of a $500,000 loss was not complied with.

(Brennan Decl., Exh. D, at 36, 37.)

Finally, Lourdes also fails to prove that Restaino prejudiced its rights by "miscontru[ing] and disregard[ing]" his own evidentiary ruling.  The ruling at issue involved a previous Interest Arbitration Award between Lourdes and JNESO from March 2000, which JNESO sought to introduce into evidence.  Lourdes objected to the admission of the 2000 award on the ground that it was irrelevant to the circumstances surrounding the 2003 scheduling changes at issue.  (Brennan Decl., Exh. C, at 230-34.)  JNESO argued that it was relevant because it showed

18

that Lourdes had previously attempted to implement 8-hour shifts in the Emergency Department.  (Id.)  Arbitrator Restaino admitted the document for that particular purpose.  (Id. at 233, 234.)  However, when issuing his award, Restaino considered the document as evidence of Lourdes' financial condition in 2003. (Brennan Decl., Exh. D, at 36, 37.)  In so doing, he seemingly overlooked or disregarded the limitation he had placed on the use of the document.  Moreover, he erroneously attributed a date of March 2003, rather than March 2000, to the document.

It is clear that Restaino misapplied or misconstrued both the evidence and his own evidentiary ruling; however, an error does not constitute "misbehavior" within the meaning of § 10(a)(3).  Furthermore, Lourdes has not established that the error materially prejudiced its rights or affected the outcome of the arbitration.

In sum, this Court cannot find that the Arbitrator engaged in misconduct justifying vacatur of the arbitration award.  At most, this Court can only find that the Arbitrator may have made some errors and reached some decisions that this Court may have not reached.  This conduct simply does not rise to the level of misconduct required to support a vacatur of an arbitration award.

### 3.    Lourdes Has Not Established Arbitrator Bias

Lourdes also argues that the award should be vacated under § 10(a)(2)

because Arbitrator Restaino was biased against Lourdes and in favor of JNESO throughout the underlying arbitration.  Section 10(a)(2) of the Federal Arbitration Act allows a district court to vacate an arbitration award where "there was evident partiality or corruption in the arbitrators."  9 U.S.C. § 10(a)(2).  "Evident partiality" requires more than just an appearance of bias; there must be actual evidence of bias.  Indeed, a party asking a court to vacate an arbitration award for "evident partiality" must show that "a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration."  Kaplan v. First Options of Chi., Inc., 19 F.3d 1503, 1523 (3d Cir. 1994) (internal quotations omitted). Thus, "evident partiality" requires proof of circumstances "powerfully suggestive of bias."  Id. (citations omitted); see also Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 626 (6th Cir. 2002) ("The alleged partiality must be direct, definite, and capable of demonstration, and the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator."); Gianelli Money Purchase Plan and Trust v. ADM Investor Servs., Inc., 146 F.3d 1309, 1312 (11th Cir. 1998) (same); Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141, 146 (4th Cir. 1993) (same); Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh, 933 F.2d 1481, 1489 (9th Cir. 1991) (a party "must demonstrate more than a mere appearance of bias to

disqualify an arbitrator").

There is no such powerful suggestion of bias in the instant case.  Lourdes makes two arguments in support of its allegation of bias.  First, Lourdes contends that the manner in which Restaino conducted the arbitration and the award itself on their face exhibit Restaino's bias.  The Court disagrees.  None of the Arbitrator's conduct constitutes powerfully suggestive evidence of bias.  Nor does the Court find the Arbitrator's decision and award to be evidence of "evident partiality."  Although, as explained below, the Court finds that the decision fails to draw its essence from the CBA, this does not in and of itself support a finding of bias on the part of the Arbitrator.

Second, Lourdes argues that the greater context in which Restaino acted evidences his bias against it and in favor of the Union.  Specifically, Lourdes contends that

> unrebutted record evidence shows that many actors and agencies in the New Jersey state government—including then-Commissioner of Labor and unabashed JNESO ally Albert Kroll and then-Governor James McGreevey—were biased in favor of JNESO and against Lourdes.  As a natural consequence, Mr. Restaino—an agent of the state and an individual who depends upon maintaining the goodwill of state officials for his continued livelihood—was similarly biased against Lourdes.

(Lourdes' Mem. at 27.)  Lourdes points to several statements and actions indicating that various government officials favored JNESO at or around the time

21

of the instant dispute and arbitration.  For example, Lourdes alleges that then-Governor McGreevey attempted to pressure Lourdes by informing Lourdes' President and Chief Executive Officer that the Governor's office would provide funding to compensate Lourdes for any money it lost by acceding to JNESO's demands, and that the State had the apparatus—in the form of various agencies, such as the New Jersey Department of Labor ("NJDOL") and the New Jersey Department of Health and Senior Services—to pressure Lourdes into acceding to the demands.  Similarly, Lourdes claims that NJDOL informed Lourdes that it would withdraw a $400,000 labor grant that had been earmarked for Lourdes unless Lourdes acceded to JNESO's demands, and that NJDOL Commissioner Albert Kroll had an "unusually close relationship" with JNESO.

Even assuming *arguendo* that all of Lourdes' allegations are true and that JNESO did have broad governmental support, the Court will not conclude based on these allegations that Arbitrator Restaino must have been biased simply because he was a state actor.  Lourdes' argument would apply equally to every arbitrator affiliated with New Jersey State Board of Mediation.  It has offered no specific evidence or allegations particular to Restaino.  This clearly fails to reach the high standard for vacating an award based on arbitrator bias.  See Gianelli Money Purchase Plan, 146 F.3d at 1312 ("The alleged partiality must be direct,

22

definite and capable of demonstration rather than remote, uncertain and speculative.").

In sum, since Lourdes has not put forth any evidence that is "powerfully suggestive of bias," the Court finds that it has not demonstrated "evident partiality" with respect to Arbitrator Restaino.

### 4.      The Award Does Not Draw its Essence From the CBA

Lourdes' final argument is that the award should be vacated because it does not draw its essence from the CBA.  Specifically, Lourdes claims that the award contradicts explicit CBA provisions and both ignores and misstates the record evidence.  As explained above, "[a]n award may be vacated if the arbitrator demonstrates manifest disregard for the CBA."  Major League Umpires Ass'n, 357 F.3d at 280.  Although the manifest disregard doctrine is a "strict standard," which is rarely invoked to vacate an arbitration award, Newark Morning Ledger Co., 797 F.2d at 165, the Court believes that it is properly invoked here.

The Third Circuit's opinion in Pennsylvania Power Company v. Local Union No. 272 of the International Brotherhood of Electrical Workers, 276 F.3d 174 (3d Cir. 2001), is instructive.  In Pennsylvania Power Company, the employer entered into a CBA in which it agreed "not [to] discriminate, coerce, nor intimidate any employee because of membership or non-membership in the

23

Union." Id. at 176.  The agreement also provided that if the Union cooperated with the company in attaining production efficiency, the company would use a voluntary retirement benefits program, rather than layoffs, if it needed to reduce its workforce.  Id.  In 1998, the company notified the Union that its members would not be provided  voluntary retirement benefits because the Union had not cooperated with the company to increase efficiency.  The Company did, however, provide these benefits to its supervisory employees who were not covered by the CBA.  Id. at 176-77.

The dispute was submitted to arbitration, and the arbitrator found that the company violated the non-discrimination provision of the CBA by offering retirement benefits to supervisory employees, but not to employees represented by the Union.  He ordered that the benefits be offered to the covered employees.  Id. at 177.   The United States Court of Appeals for the Third Circuit found that the arbitrator's decision "conflict[ed] with the express provisions of the Agreement," id. at 181, and that the arbitrator had "altered the Agreement in direct violation of its provision that he had no power to do so . . . [by writing] into the contract that the Plant production and maintenance employees shall have the same benefits as the supervisory employees," id. at 179.  Ultimately, the Third Circuit ordered the award vacated on the ground that it did not draw its essence from the CBA.  Thus,

24

Pennsylvania Power Company makes clear that an "'arbitrator may not ignore the plain language of the contract,'" Id. at 178 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)), and may not alter, amend, or write provisions into the contract.  Yet this is precisely what Restaino did here; he ignored the contract provision defining "layoff," and wrote in his own.

Article XI of the CBA clearly defines a layoff as "a permanent reduction in force and/or a reduction in force of unlimited duration."  (Brennan Decl., Exh. I (CBA), at 17.)  The term "reduction in force" clearly implies an actual reduction in the number of employees in the workforce—*i.e.*, a complete suspension of employment.  See, e.g., Cranston Print Works Co., 89-2 A.R.B. ¶ 8513 (Robinson 1989) (concluding that there is no "reduction in force" if there is no reduction in the number of employees).  Thus, the plain language of Article XI makes clear that a reduction in work hours, even if coupled with a loss of fringe benefits, is not considered a layoff under the terms of the CBA.

JNESO argues that the language of Article XI is ambiguous, and that "[a]rbitrators have interpreted similarly broadly worded layoff clauses as incorporating reductions in hours." (JNESO's Rep. Br. at 30.)  The Court agrees that if the language of Article XI were in fact ambiguous, then the Arbitrator's broad definition of a "layoff" might be appropriate.  Absent specific contract

25

language to the contrary, "arbitrators generally hold that a layoff necessarily involves a suspension of employment, either temporary or indefinite, and that a reduction in workweek is not a layoff but rather a rescheduling of work."  9 Labor and Employment Law § 245.05; see also In re Madison Mutual Ins. Co., 81 Lab Arb. Rep. (BNA) 519 (1983) (Mangeot, Arb.) (defining a "layoff" as requiring "an actual severance, interruption or break in service"); Hugo Neu-Proler Co., 109 Lab. Arb. Rep. (BNA) 880, 884-86 (1987) (Richman, Arb.) (declaring that a layoff is a decrease in the workforce); Bethlehem Steel, 16 Lab. Arb. Rep. (BNA) 71, 72 (1950) (Feinberg, Arb.) (defining a layoff as "an actual severance from the Company's payroll, and a break in continuous service").  However, some arbitrators have broadly defined a "layoff" to include any reduction in the normal work week that results in a loss of work.  Frank Elkouri & Edna Elkouri, How Arbitration Works 786 (6th ed. 2003).

Accordingly, if the CBA at issue here did not define the term "layoff," or if the definition were unclear, Arbitrator Restaino's definition and ultimate decision might draw their essence from the CBA.  However, as explained above, the CBA does define "layoff," and does so clearly and unambiguously.  In such circumstances, the Arbitrator must respect and follow the definition agreed to by the parties.  Arbitrator Restaino did not.  Instead, he decided that the reductions in

work hours implemented by Lourdes constituted layoffs within the meaning of the

CBA.  He explained his reasoning as follows:

> [T]he Employer's argument that a reduction in hours is not a layoff is
> interesting, and the appendix of arbitrable determinations in support
> of that argument was interesting reading.  However, the fact remains
> that Ms. Neuenfeldt had her hours reduced and lost fringe benefits.
> You cannot tell me that is not a layoff.

(Brennan Decl.,  Exh. D (arbitration award), at 41.)  What the Employer's attorney

could or could not tell the Arbitrator is not the issue.  The Arbitrator's personal

opinion on what does or does not qualify as a layoff is clearly insufficient to

overcome the clear definition of the term, which was bargained for and agreed to

by the parties.

Restaino's personal concept of a "layoff" deviates from the contractual

definition contained in the CBA in his complete disregard for the negotiated

concept of permanence.  The CBA explicitly requires a layoff to be permanent.

Yet Arbitrator Restaino did not even mention permanence in his definition of the

term or in his analysis of the scheduling changes at issue.  Had he done so, there

might be a stronger argument that he considered the contractual definition and his

decision might draw its essence from the CBA.

Arbitrator Restaino attempted to justify his personal definition of "layoff"

by reference to the parties' part practice of treating reductions in hours the same as

layoffs.  This reliance on past practice is inappropriate.  Diane Prestwood, the

president of JNESO, did testify that the parties' practice had been to utilize the

layoff procedure to handle both eliminations of positions and reduction in hours.

(Brennan Decl., Exh. A, at 135.)  The law is clear, however, that prior conduct

cannot be used to alter unambiguous contract language.[6]  See Elkouri & Elkouri,

supra, at 627; 9 Labor and employment Law § 227.03[3] ("The clear majority rule

. . . is the traditional view that in the event of conflict between the language of the

agreement and past practice, the language of the agreement . . . must govern."); see

also, e.g., In re BASF Wyandotte Corp., 84 Lab. Arb. Rep. (BNA) 1055, 1057-58

(1985) (Caraway, Arb.) ("Where a conflict exists between the clear and

unambiguous language of the contract and a long standing past practice, the

Arbitrator is required to follow the language of the contract."); Phelps Dodge

Cooper Prods. Corp., 16 Lab. Arb. Rep. (BNA) 229, 233 (1951) (Justin, Arb.)

("Prior acts cannot be used to change the explicit terms of a contract.").  This is

particularly true where, as here, the CBA includes a so-called "zipper clause,"

which explicitly states that "the terms of this Agreement shall constitute the full

---

[6] An exception to this general rule is that past practice can be used to show that the parties agreed to amend the contract.  In this situation, the party contending that the clear language of the contract was modified must establish by "very strong proof" that both parties intended to modify the existing contractual language.  See Elkouri & Elkouri, supra, at 629. No such proof exists here.

and complete agreement between the parties *notwithstanding any prior oral agreements, written agreements, addendum or past practices*." (Brennan Decl., Exh. I (CBA), at  Art. XXXIV.)

In sum, the Court finds that the Arbitrator ignored the plain language of the CBA in direct violation of the law, and altered its terms in direct contravention of a contract provision that he had no power to do so.  (See Brennan Decl., Exh. I (CBA), at Art. VII ("The Arbitrator shall be bound by the terms and conditions of this Agreement and shall not have the power to add to, subtract from, or any way modify any of the terms.").)  He wrote into the Agreement a new definition of "layoff," which directly conflicts with the express provisions of the CBA and was not agreed to by the parties during the course of their negotiation.  Accordingly, the Arbitrator's decision fails to draw its essence from the Agreement, making this one of those rare instances when it is appropriate for a court to vacate the decision of an arbitrator.

### III.   <u>CONCLUSION</u>

The Arbitrator's decision does not draw its essence from the CBA. Accordingly, Lourdes' motion to vacate the award is granted and JNESO's motion to confirm the award is denied.

<u>/s/ John C. Lifland, U.S.D.J.</u>

**Date:** April 4, 2007